IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES HUFFSTUTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )   CIV-12-125-M |
| v. | ) |
| | ) |
| JUSTIN JONES, et al., | ) |
| | ) |
| Defendants. | ) |

SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983. On February 1, 2012, Plaintiff filed a Complaint naming as Defendants Mr. Justin Jones, the Director of the Oklahoma Department of Corrections ("ODOC"), Ms. Janet Dowling, the Acting Warden of the James Crabtree Correctional Center ("JCCC") where Plaintiff is incarcerated, and Ms. Kelli Curry, a Kitchen Supervisor at JCCC. Plaintiff alleged that his First Amendment rights had been violated by Defendants when he was removed from the prison's kosher diet after he was found to be non-compliant with ODOC's regulations governing inmates on special or religious diets. Plaintiff alleged he was notified that the suspension extended for 120 days and that he was offered non-kosher meals as an alternative diet for the duration of the special-diet restriction.

1

In an Amended Complaint filed April 24, 2012, Plaintiff alleges his First Amendment rights to freely exercise his religion were violated due to his 120-day suspension from the kosher meal plan at JCCC. Plaintiff alleges that he was advised he was suspended from the kosher diet due to his non-compliance with ODOC policy regarding canteen purchases by inmates on religious meal plans. He asserts that the suspension also violated his due process and equal protection rights because he was not afforded an opportunity to object to the suspension. In ground two, Plaintiff contends that the 120-day suspension violated his Eighth Amendment rights because "the defendants were deliberately indifferent to the obvious health risk resulting from the denial of such a basic human need as food." Amended Complaint, at 7. Plaintiff admits that he was offered non-kosher meals as an alternative during the period of suspension.

With respect to the issue of exhaustion of administrative remedies, Plaintiff contends that he "submitted a bevy of [Request to Staff forms] to Deputy Warden Janet Dowling regarding the lack of an adequate diet, numerous medical requests regarding same, and requesting 'Ensure' as a dietary supplement" and that he "had several conversations with Chaplain Drawbridge about his inadequate diet and about Passover meals weeks in advance." Plaintiff alleges he also "submitted [Request to Staff forms] regarding Passover celebration." Amended Complaint, at 6. Plaintiff alleges all of his Request to Staff forms "went unanswered" and that his grievances submitted to Defendant Dowling "have also gone unanswered." Amended Complaint, at 9. As relief, Plaintiff seeks monetary damages.

Defendants have moved for summary judgment with respect to Plaintiff's claims, and

Plaintiff has responded. Defendants have also caused the filing of a special report consistent with <u>Martinez v. Aaron</u>, 570 F.2d 217 (10th Cir. 1978). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that Defendants' Motion for Summary Judgment on the basis of Plaintiff's failure to exhaust administrative remedies be granted and that judgment issue in favor of Defendants and against the Plaintiff.

I. <u>Background</u>

Plaintiff is incarcerated serving five, consecutive, 99-year terms of imprisonment for convictions entered in 1988 in the District Court of Garfield County. Special Report (Doc. # 18), Att. 5 (labeled Attachment 1). In a special religious diet request form signed by Plaintiff on June 24, 2009, Plaintiff attested that he had one previous violation of the special/religious diet, that he wished to be reinstated to a kosher diet, and that he would not consume or possess any food that was inconsistent with the diet requested, regardless of the source of the food, unless a diet change had first been requested and received. Special Report (Doc. # 18), Att. 6 (labeled Attachment 2). Plaintiff attested that he agreed a second violation of the guidelines would result in a 120-day suspension of the kosher diet and the submission of a new religious diet request. <u>Id.</u>

In an Incident Report dated January 11, 2012, Ms. Curry stated that "[o]n the above date and approximate time I, Kelli Curry [Food Service Manager]-III, did a review of kosher participants['] canteen records to ensure the kosher offenders were not purchasing items that were not kosher. Attached is a listing that shows non kosher items were purchased.

3

Offender Huffstutler . . . is being removed from the kosher diet for 120 days as this is his second violation." Id.  An Offender Transaction History of Plaintiff's canteen purchases at JCCC between December 9, 2011 and January 10, 2012, indicates several non-kosher food items were purchased by Plaintiff in the prison's canteen. Id.  An Interoffice Memorandum dated January 11, 2012, from Ms. Curry advises Plaintiff that "during an audit of your canteen purchases for the last 30 days you have been found to consume or possess food that is not kosher.  As this is your second offense you will be removed from the kosher diet for 120 days." Id.

II. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).  "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).  Also, exhaustion is required even when the administrative procedure fails to provide a particular type of relief, such as monetary damages. Booth v. Churner, 532 U.S. 731, 734, 741 (2001).

Defendants seek summary judgment based on Plaintiff's alleged failure to exhaust the administrative remedies available to him under ODOC's grievance policy. Having asserted the affirmative defense of nonexhaustion, Defendants bear the burden of proof. See Jones v. Bock, 549 U.S. 199, 215-216 (2007)(failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the [Prison Litigation Reform Act] lies with the defendant."). Defendants must therefore demonstrate the absence of a disputed, material fact on the issue of exhaustion. See Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). If Defendants satisfy this burden, Plaintiff would incur the obligation to "demonstrate with specificity the existence of a disputed material fact. If the [P]laintiff fails to make such a showing, the affirmative defense bars his claim[s], and the [Defendants are] then entitled to summary judgment as a matter of law." Id. To properly exhaust administrative remedies, Plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). Futility is not an excuse to the PLRA's exhaustion requirement. See Booth, 532 U.S. at 741 n. 6; Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1214 (10th Cir. 2003)("The Supreme Court has refused to 'read futility or other exceptions into' the § 1997e(a) exhaustion requirement.").

Under the administrative grievance process available for Oklahoma inmates, the aggrieved prisoner should initially attempt to informally resolve the matter with the appropriate staff member. See Special Report, Att. 11 (OP-090124) (labeled Attachment 7),

5

at 8. If that attempt is unsuccessful, the inmate may file a Request to Staff addressed to the appropriate staff member. See id. at 9. If the inmate is still not satisfied, the inmate may file a grievance. See id. at 9, 11-15. If the inmate remains dissatisfied with the result, the inmate may appeal to the administrative review authority or, where appropriate, the chief medical officer. See id. at 15-18. After this step, the administrative procedure would be completed. Id. at 18. See Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority."), cert. denied, __ U.S. __, 131 S.Ct. 1691 (2011).

It is not disputed that:

1. On June 24, 2009, Plaintiff was reinstated to the kosher diet.

2. On January 11, 2012, Ms. Curry determined that Plaintiff purchased non-kosher items from the canteen. Because it was Plaintiff's second violation, he was removed from the kosher diet for 120 days.

3. On February 1, 2012, Plaintiff filed the instant action against Defendants, and Plaintiff filed an Amended Complaint on April 24, 2012.

4. ODOC has a valid grievance procedure which requires an Oklahoma inmate to (1) submit a Request to Staff form within seven calendar days of the alleged incident; (2) if not resolved, submit a grievance to the facility's reviewing authority, usually the warden, within 15 days of the later of the incident or the date of the response to the Request to Staff; (3) if not resolved, submit an appeal to the ODOC Administrative Review Authority ("ARA") within

15 calendar days of receipt of the reviewing authority's response.

5. If an inmate does not receive a response to a grievance, the inmate may submit a grievance to the ARA, along with evidence of submission of the grievance to the facility's reviewing authority.

6. The decision of the ARA is final, and no further ODOC administrative remedies are available to inmates.

7. Carol Dunnam, a JCCC official, maintains JCCC's grievance log, and she avers that she did not receive a grievance from Plaintiff relating to the issue of the kosher diet.

8. During the months of January, February, March, and April 2012, JCCC officials did not receive a grievance from Plaintiff.

8. As of April 23, 2012, JCCC Chaplain Drawbridge has not received a request from Plaintiff for reinstatement to the kosher diet via a Special/Religious Diet Request form.

9. ODOC official Minyard avers that Plaintiff did not submit a grievance or an appeal of a grievance to the ARA addressing his removal from the kosher diet.

In his responsive pleading, Plaintiff asserts that he exhausted his administrative remedies or, alternatively, that JCCC officials obstructed his ability to exhaust his administrative remedies by failing to respond to his grievances. Plaintiff alleges he submitted an "emergency" grievance to Defendant JCCC Interim Warden Dowling. However, this grievance does not reflect that it was received by Defendant Dowling or any prison officials. Response, atts. 2-3. Plaintiff has attached copies of other documents to his responsive pleading, including a Request to Staff dated January 12, 2012, and addressed to

Defendant Dowling in which Plaintiff complains of his removal from the kosher diet. However, this Request to Staff does not reflect that it was received by Defendant Dowling or any prison official. Response, att. 1.

Only one of the documents attached to Plaintiff's responsive pleading, a Request to Staff directed to "Ms. Jackie Goss, Property/Jay Drawbridge, Chaplain," and dated May 9, 2012, reflects that the Request to Staff was actually received by a JCCC official. In that Request to Staff, Plaintiff requested to be able to "donate sacred religious items to JCCC orthodox Jewish community rather than" have them destroyed. Plaintiff's Response, att. 4. This Request to Staff does not exhaust Plaintiff's administrative remedies concerning the issues raised in the Amended Complaint.

Even assuming Plaintiff submitted an "emergency" grievance to Defendant Dowling that was not answered, Plaintiff has not alleged or demonstrated that he utilized the grievance review process provided in the ODOC grievance policy for unanswered grievances. See Jernigan v. Stuchell, 304 F.3d 1030, 1032-1033(an inmate "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them," and administrative remedy was not "unavailable" where regulations provided bypass in the event inmate does not receive a response). See also Smith v. Beck, 165 Fed.Appx. 681, 685, 2006 WL 292012, * 3 (10th Cir. Feb. 8, 2006)(unpublished order)(recognizing that "[a]lthough a prison official's failure to respond to a grievance can make the administrative exhaustion process unavailable, . . . the ODOC policies provide alternatives: . . . prisoners may continue to appeal within the prison system even if they do not receive responses to their Requests to

Staff or their grievances. Thus, prison officials' alleged failure to respond does not excuse Mr. Smith's failure to exhaust his administrative remedies.")(citation omitted). Plaintiff did not complete the administrative remedial process available to him, and the failure of prison officials to respond to his Requests to Staff or grievances concerning his suspension from the kosher diet provided at JCCC does not excuse his failure to exhaust his administrative remedies concerning the claims asserted in the Amended Complaint.

Many of the documents attached to Plaintiff's responsive pleading involve other inmates. None of these documents provides a basis for finding that ODOC officials obstructed Plaintiff's ability to exhaust his available administrative remedies concerning his removal from the kosher meal plan.

III. Motion for Preliminary Injunction

In a Motion Requesting Emergency Injunctive Relief and Appointment of Counsel (Doc. # 3), Plaintiff seeks an order directing Defendants to "immediately re-instate Plaintiff's Kosher diet" and appoint him counsel. To obtain a preliminary injunction, Plaintiff must establish that four factors weigh in his favor: "(1) [he] is substantially likely to succeed on the merits; (2) [he] will suffer irreparable injury if the injunction is denied; (3) [his] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1070 (10th Cir. 2009); *see also* Fed.R.Civ.P. 65; Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). "If the plaintiff can establish that the latter three requirements tip strongly in his favor, the test is modified,

and the plaintiff may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002)(quotation omitted).

"[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003). Moreover, the purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held," Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981), and, therefore, "injunctions that disrupt the status quo are disfavored and must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." Beltronics, 562 F.3d at 1070 (quotation omitted). A preliminary injunction "grant[s] intermediate relief of the same character as that which may be granted finally." De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945). When the movant seeks intermediate relief beyond the claims in the complaint, the court has no authority to enter a preliminary injunction.

In this case, Plaintiff seeks a mandatory injunction directing prison officials to lift the 120-day suspension ordered after a JCCC official found that Plaintiff had violated ODOC policy by purchasing non-kosher food items from the prison canteen. "A mandatory preliminary injunction - one which requires the nonmoving party to take affirmative action - is 'an extraordinary remedy' and is generally disfavored. . . . Before a court may grant such relief, the movant must 'make a heightened showing of the [ ] four factors.'" Little v. Jones,

607 F.3d 1245, 1251 (10th Cir. 2010). In his motion, Plaintiff admits that he "strayed form following the strict requirements associated with a kosher diet." Plaintiff's Motion, at 2. Additionally, as found herein, Plaintiff did not satisfy the PLRA's requirements for exhausting his available administrative remedies before filing the instant action. Accordingly, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits or the remaining factors. To the extent Plaintiff seeks the appointment of counsel, the motion should be denied in light of the recommendation herein.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion for Summary Judgment (Doc. # 19) be GRANTED and that judgment issue in favor of Defendants and against the Plaintiff on the ground of failure to exhaust administrative remedies. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by      July 17th, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not

specifically addressed herein is denied.

    ENTERED this   27th   day of   June  , 2012.

                                      */s/ Gary M. Purcell*
                                      GARY M. PURCELL
                                      UNITED STATES MAGISTRATE JUDGE